IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VREJ OHANNES TOROSIAN | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| IMMIGRATION AND NATURALIZATION SERVICE | : | NO. 02-4734 |
| | : | |
| | : | |
| Respondent. | : | |

**<u>ORDER</u>**

AND NOW, this          day of                    , 2002, upon consideration of the Government's response to Petitioner's Writ of Habeas Corpus, and any response thereto, it is hereby ORDERED that the petition is DENIED.

BY THE COURT:

_____
LEGROME D. DAVIS
*Judge, United States District Court*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VREJ OHANNES TOROSIAN : | |
| : | |
| Petitioner, : | |
| : | |
| v. : | CIVIL ACTION |
| : | |
| IMMIGRATION AND : | NO. 02-4734 |
| NATURALIZATION SERVICE : | |
| : | |
| Respondent. : | |

**GOVERNMENT'S RESPONSE TO
PETITION FOR WRIT OF HABEAS CORPUS**

The United States of America, by its attorneys, Patrick L. Meehan, United States Attorney for the Eastern District of Pennsylvania, and Susan R. Becker, Assistant United States Attorney for the District, on behalf of respondent, the Immigration and Naturalization Service ("the Service"), hereby files this response to Vrej Ohannes Torosian's Petition for Writ of Habeas Corpus and moves the Court to dismiss the Petition with prejudice.

**I.     Introduction**

This is a habeas petition brought under 28 U.S.C. § 2241 by Vrej Ohannes Torosian, a native and citizen of Iraq. He entered the United States as a lawful permanent resident on May 7, 1976. (See Exhibit 1). Torosian has an extensive criminal history, with thirteen convictions since 1994. (See Exhibit 2, p.2). On January 31, 2001, the Service issued a Notice to Appear, advising Torosian that he was subject to removal from the United States based on his November 29, 2000 convictions in New York for grand

larceny, criminal possession of stolen property in the fourth degree, and criminal possession of stolen property in the fifth degree. (See Exhibits 1 and 3). On November 27, 2001, an Immigration Judge ordered Torosian removed to Iraq based on his criminal convictions.

On February 12, 2002, Torosian completed his criminal sentence for grand larceny in New York, and the Service took him into custody in order to carry out the process of removing him from the United States. On March 22, 2002, the Board of Immigration Appeals denied Torosian's appeal, at which point his order of removal became administratively final. On July 11, 2002, Torosian filed this habeas petition. He claims that his detention during these removal proceedings is illegal and that the Service will not be able to remove him to Iraq in the reasonably foreseeable future.

Torosian's claims fail, however, because his detention is consistent with the Supreme Court's dictates in Zadvydas v. Davis, 121 S.Ct. 2492 (2001), which provides that the Service may detain an alien after a final order of removal for a "period reasonably necessary to bring about that alien's removal from the United States." Id. at 2498. The Supreme Court has found this reasonable time period to be six months (at a minimum), and Torosian is still within the "presumptively reasonable" time established by Zadvydas. Id. at 2505. Torosian's petition for writ of habeas corpus should therefore be dismissed. The Court has jurisdiction under 28 U.S.C. § 2241(c)(3); there is no exhaustion requirement.

**II.    Factual Background**

1. Vrej Ohannes Torosian is a native and citizen of Iraq. (See Exhibit 1).

2. Torosian entered the United States as a lawful permanent resident on May 7, 1976 when he was approximately 15 years old. (See Exhibit 1; Immigration Judge's decision at Exhibit 3, p.4).

3. Torosian has an extensive criminal history, with thirteen convictions since 1994. (See Exhibit 2, p.2).

4. On January 31, 2001, the Service issued a Notice to Appear, advising Torosian that he was subject to removal from the United States based on his November 29, 2000 convictions in New York for grand larceny, criminal possession of stolen property in the fourth degree, and criminal possession of stolen property in the fifth degree. (See Exhibit 1; criminal conviction records at Exhibit 3).

5. On November 27, 2001, an Immigration Judge found that Torosian had admitted the allegations in the Notice to Appear, and ordered him removed to Iraq based on his criminal convictions. (See Exhibit 4, pp.1-3). The Immigration Judge denied Torosian's claims for asylum and relief under the Convention Against Torture Act. (See Exhibit 4, pp. 3-6). Torosian appealed the Immigration Judge's decision to the Board of Immigration Appeals ("BIA").

6. On February 12, 2002, Torosian completed his criminal sentence for grand larceny in New York, and the Service took him into custody. (See Exhibit

2, p.1).

7. On March 22, 2002, the BIA denied Torosian's appeal, at which point his order of removal became administratively final. (See Exhibit 5).[1]

8. On or about July 9, 2002, because the Service had not yet carried out the order removing Torosian to his native country, the Service performed a review of his custody. (See Custody Review Worksheet, Exhibit 2).

9. On July 11, 2002, the District Director issued a decision that Torosian should remain in custody based on his extensive criminal history and the risk of flight were he to be released. (See Exhibit 6).

10. On July 11, 2002, Torosian filed this habeas petition challenging his detention during these removal proceedings.

### III. Legal Argument

---

[1] On March 5, 2002, before the order of removal became final, an Immigration Judge issued a bond decision allowing Torosian to be released from custody upon payment of a $12,000 bond. The basis for the decision is contained in the Bond Redetermination Memorandum, which relates to the March 5, 2002 bond decision, but was written subsequently. (See Order of the Immigration Judge With Respect to Custody and Bond Redetermination Memorandum, both attached at Exhibit 7). The Service appealed the bond decision to the BIA. On May 30, 2002, the BIA considered the appeal on the bond decision and found that the issue was moot because there was now an administratively final order of removal which precludes Torosian's release on bond by an Immigration Judge. The BIA therefore vacated the bond decision. (See Exhibit 8).

A. <u>Torosian's Detention is Lawful Under Both The Act and the Supreme Court's Decision in Zadvydas v. Davis.</u>

Under the Immigration and Nationality Act, 8 U.S.C. § 1101, et seq. ("the Act"), the Service has a 90 day statutory "removal period" in order to effect Torosian's removal from the United States. 8 U.S.C. § 1231(a)(1)(A). The removal period starts at the latest of three points: the date the order becomes administratively final; the date of any reviewing court's final order; or the date the alien is released from criminal confinement. See 8 U.S.C. § 1231(a)(1)(B)(i)-(iii). In Torosian's case, the removal period began on the date his order became administratively final, on March 22, 2002. See 8 U.S.C. § 1231(a)(1)(B)(i). The Service is required to keep Torosian in custody during the removal period pursuant to 8 U.S.C. § 1231(a)(2) which states:

> During the removal period, the Attorney General <u>shall</u> detain the alien. Under no circumstances during the removal period shall the Attorney General release an alien who has been found . . . deportable under [8 U.S.C. § 1227(a)(2)].

(emphasis added).

If the Service is unable to remove the alien during those 90 days, however, the government "may" continue to detain the alien if the Attorney General has determined the alien to be a "risk to the community or unlikely to comply with the order of removal . . . ." 8 U.S.C. § 1231(a)(6). Although § 1231(a)(6) does not clearly express how long the government may continue to detain the alien past the initial 90-day removal period, the Supreme Court has interpreted § 1231(a)(6) to limit an alien's post-removal-period

-5-

detention "to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas v. Davis, 121 S.Ct. 2491, 2498 (2001). The Court further stated that extending the detention period for an alien in deportation proceedings up to six months is "presumptively reasonable." Id. at 2505.

In Zadvydas, the petitioner had been admitted to the United States for permanent residence, but had been ordered deported following criminal convictions. Because Zadvydas was actually "stateless" (he had been born in a displaced persons' camp in Europe just after the Second World War), no country would agree to take him. The Court held that Zadvydas' continued detention was not permissible absent some showing that he could be removed.

In this case, Torosian's removal period began on March 22, 2002, the date his order of removal became administratively final. See 8 U.S.C. § 1231(a)(1)(B)(i). Thus, under Zadvydas, the Service would have until at least September 22, 2002 as a presumptively reasonable time to detain Torosian pending actual removal.

However, even if the Service were unable to remove Torosian by September 22, 2002, he would not necessarily be entitled to release from custody. The Court in Zadvydas did not limit the removal period to a maximum of six months. Rather, the Court noted:

> After this 6-month period, once the alien provides good
> reason to believe that there is no significant likelihood of
> removal in the reasonably foreseeable future, the Government
> must respond with evidence sufficient to rebut that showing.
> And for detention to remain reasonable, as the period of prior

> post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. <u>This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.</u>

<u>Zadvydas</u>, 121 S.Ct. at 2505 (emphasis added).

Torosian has not presented sufficient evidence that "there is no significant likelihood of removal in the reasonably foreseeable future," as required by <u>Zadvydas</u>. The Service is making active efforts to obtain travel documents for Torosian. (See Exhibit 2, p.1, noting request made on May 2, 2002 for travel documents to Service Headquarters and the Iraq Interest Section). The Service is mindful that ultimately it may not be able to obtain the travel documents necessary to remove Torosian to Iraq, given the political situation that exists between the two countries. Nonetheless, the Service is entitled to at least six months to determine whether it will be able to remove Torosian to Iraq (or another country that would accept him) in the reasonably foreseeable future. See <u>Zadvydas</u>, 121 S.Ct. at 2505; <u>see also</u> 8 C.F.R. 241.13(2)(ii).

In any event, the Service has followed its procedures for reviewing Torosian's custody status since he has been detained beyond the 90 day statutory removal period. The regulations pertaining to the Act state that:

> The district director may continue in custody any alien . . . removable under [8 U.S.C. §] 1227(a)(2). . . or who presents a significant risk of noncompliance with the order of removal, beyond the removal period, as necessary, until removal from the United States. If

-7-

> such an alien demonstrates by clear and convincing evidence that the release would not pose a danger to the community or a significant flight risk, the district director may, in the exercise of discretion, order the alien released from custody on such conditions as the district director may prescribe, including bond in an amount sufficient to ensure the alien's appearance for removal.

8 C.F.R. § 241.4(a).

In reviewing an alien's case for continued detention or release:

> The district director may consider, but is not limited to considering, the following factors: (1) The nature and seriousness of the alien's criminal convictions; (2) Other criminal history; (3) Sentence(s) imposed and time actually served; (4) History of failures to appear for court (defaults); (5) Probation history; (6) Disciplinary problems while incarcerated; (7) Evidence of rehabilitative effort or recidivism; (8) Equities in the United States; and (9) Prior immigration violations and history.

8 C.F.R. § 241.4(f).

On July 11, 2002, the District Director reviewed Torosian's custody status. Based on a review of Torosian's file and the Post-Order Custody Review Sheet prepared by the deportation officer (Exhibit 2), the District Director determined that Torosian would not be released from Service custody because:

> You have been arrested and convicted of various offenses for a fourteen-year period. Your last offense for Grand Larceny resulted in a two to four year sentence. You have received disciplinary actions while in State custody. You have displayed a pattern of anti social behavior for which you have not taken

> any rehabilitative steps to overcome. You have not through clear and convincing evidence proven that you would not pose a threat to the community, or become a <u>risk of flight</u> if released.

(See Exhibit 8, July 11, 2002)(emphasis in original).

This custody review satisfies the requirements set forth in 8 C.F.R. § 241.4(a), as well as the dictates of the Supreme Court in <u>Zadvydas</u>. The custody review process has now been transferred to the Service's Post-Order Headquarters Detention Unit, which will continue to review Torosian's status. (See Exhibit 6). Should Torosian continue to be detained for an extended period of time while awaiting removal, he is entitled to additional custody reviews on a regular basis, and may present evidence of changed circumstances that would justify his supervised release, or evidence that would establish that the Service will not be able to carry out his removal in the reasonably foreseeable future. At this time, however, the Service's detention of Torosian is consistent the Act and with the Supreme Court's ruling in <u>Zadvydas</u>.

## IV.     Conclusion

Petitioner Torosian cannot establish any violation of the Constitution or statutes of the United States, and there is no basis for the Court to grant the relief he requests. For the foregoing reasons, the government respectfully requests that the Court dismiss the Petition with prejudice.

                Respectfully submitted,

                PATRICK L. MEEHAN
                United States Attorney


                _____
                JAMES G. SHEEHAN
                Assistant United States Attorney
                Chief, Civil Division


Dated:  August   , 2002          _____
                SUSAN R. BECKER
                Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on the ___ day of August, 2002, I caused a true and correct copy of the foregoing Government's Response to Petition for Habeas Corpus to be served by first-class mail, postage prepaid, upon the following:

>Vrej Ohannes Torosian
>Montgomery County Correctional Facility
>60 Eagleville Road
>Norristown, PA 19403
>
>Pro se petitioner

_____
Susan R. Becker